UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| ARTHUR L. JOHNSON, | Case No. 17-07133 BLF (PR) |
|---|---|
| Plaintiff, | |
| v. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S SUMMARY JUDGMENT MOTION AS MOOT** |
| SCOTT KERNAN, | |
| Defendant. | |
| | (Docket Nos. 29, 34) |

Plaintiff, a state prisoner proceeding *pro se*, filed a complaint pursuant to 42 U.S.C. § 1983 against the Secretary of the California Department of Corrections and Rehabilitation ("CDCR"), Scott Kernan. The Court found the complaint, (Docket No. 1), stated cognizable claims based on the allegation that Plaintiff was unlawfully excluded from early parole eligibility consideration under Proposition 57, and ordered the matter served on Defendant. (Docket No. 12.) Defendant Kernan filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure on the following grounds: the claim for injunctive relief should be dismissed as moot; all damage claims should be dismissed because Defendant is entitled to immunity; and the equal protection claim should be dismissed for failure to state a claim. (Docket No. 34, hereafter "Mot.") Plaintiff filed opposition, (Docket No. 40), and Defendant filed a reply, (Docket No. 43).

In support of his motion, Defendant filed a request for judicial notice of the following state regulations in effect in 2018 and 2019, on the grounds the regulations are of public record and not subject to reasonable dispute: (1) California Code of Regulations, Title 15, §§ 2449.1, 3490, and 3491, as operative on May 1, 2018, (RJN 001-003); (2) California Code of Regulations, Title 15, §§ 2449.1, 3490, and 3491, as operative on January 1, 2019, (RJN 004-010); and (3) California Code of Regulations, Title 15, §§ 2449.30, 3495, and 3496, as operative on January 1, 2019, (RJN 011-016). (Docket No. 34-2, Def. Request for Judicial Notice ("RJN").) The Court GRANTS the request for judicial notice because these documents are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

Before Defendant filed his dispositive motion, Plaintiff filed a "cross motion for summary judgment," (Docket No. 29), to which Defendant's opposition was due by February 4, 2019. Along with his motion to dismiss, which was filed on February 1, 2019, Defendant filed a motion to stay Plaintiff's summary judgment motion unless and until the Court denies his motion to dismiss. (Docket No. 34-1.) Defendant asserts that Plaintiff filed his summary judgment before the CDCR promulgated the amendments to the regulations at issue, and that his motion to dismiss will potentially resolve the matter in its entirety. (*Id.* at 3; RJN 004-015.) Good cause appearing, the motion for stay is GRANTED such that Plaintiff's summary judgment motion shall not be deemed as unopposed.

For the reasons set forth below, Defendant's motion to dismiss is **GRANTED**, and Plaintiff's motion for summary judgment is **DENIED** as moot.

///
///
///

2

**DISCUSSION**

**A. Plaintiff's Claims**[1]

In November 2016, California voters approved Proposition 57, which provides that inmates convicted of a non-violent felony and who had served the full term of their primary offense would be eligible for parole consideration. (Compl. at 3.) In 2017, the CDCR promulgated regulations implementing Proposition 57 that, in part, categorically excluded inmates sentenced to life with the possibility of parole from the new parole process. (*Id.* at 4; RJN 001-003.) Plaintiff alleges that he was convicted of a non-violent felony and has completed the full term of his primary offense, but that he has been excluded from Proposition 57's parole process because he was sentenced to a life term with the possibility of parole under California's "three-strikes" sentencing law. (Compl. at 4.)

Plaintiff claims that Defendant Scott Kernan's policy excluding him from early parole eligibility consideration under Proposition 57 violates his right to due process. (Compl. at 3.) Plaintiff claims that the policy also violates his right to equal protection because it is not treating "third-strikers" who are similarly situated as "second-strikers," equally. (*Id.* at 3-b.) Plaintiff seeks injunctive relief against Defendant Kernan from imposing such unequal treatment, as well as damages. (*Id.* at 3-4.) Liberally construed, the Court found that complaint stated cognizable claims under § 1983. (Docket No. 12.)

**B. Analysis**

Failure to state a claim upon which relief can be granted is grounds for dismissal under Rule 12(b)(6). Dismissal for failure to state a claim is a ruling on a question of law. *See Parks School of Business, Inc., v. Symington*, 51 F.3d 1480, 1483 (9th Cir. 1995). "The issue is not whether plaintiff will ultimately prevail, but whether he is entitled to

---

[1] Defendant states that he does not concede the accuracy or truthfulness of the allegations in the complaint, but only refers to them for purposes of his motion. (Mot. at 3, fn, 1.)

3

offer evidence to support his claim." *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.... Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 553-56 (2007) (citations omitted). A motion to dismiss should be granted if the complaint does not proffer "enough facts to state a claim for relief that is plausible on its face." *Id*. at 570. To state a claim that is plausible on its face, a plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). From these decisions, the following "two principles" arise: "First to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

Review is limited to the contents of the complaint, *see Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994), including documents physically attached to the complaint or documents the complaint necessarily relies on and whose authenticity is not contested. *See Lee v. County of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). In addition, the court may take judicial notice of facts that are not subject to reasonable dispute. *See id*. at 688 (discussing Fed. R. Evid. 201(b)). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-

4

moving party. *See Symington*, 51 F.3d at 1484.

   1.   **Mootness**

Defendant first asserts that Plaintiff's claim for injunctive relief must be dismissed on the grounds of mootness. (Mot. at 5.)

The jurisdiction of federal courts depends on the existence of a "case or controversy" under Article III of the Constitution. *PUC v. FERC*, 100 F.3d 1451, 1458 (9th Cir. 1996). Whereas standing is evaluated by the facts that existed when the complaint was filed, mootness inquiries require courts to look to changing circumstances that arise after the complaint is filed. *ACLU v. Heller*, 471 F.3d 1010, 1016 (9th Cir. 2006). A claim is considered moot if it has lost its character as a present, live controversy, and if no effective relief can be granted: "Where the question sought to be adjudicated has been mooted by developments subsequent to filing of the complaint, no justiciable controversy is presented." *Flast v. Cohen*, 392 U.S. 83, 95 (1968). Where injunctive relief is involved, questions of mootness are determined in light of the present circumstances.[2] *Mitchell v. Dupnik*, 75 F.3d 517, 528 (9th Cir. 1996).

Defendant asserts that on December 26, 2018, the CDCR amended the regulations which Plaintiff challenges in this action, by issuing new regulations governing parole consideration, specifically for "indeterminately sentenced non-violent offenders." (Mot. at 3; RJN 004-015); *see also* Cal. Code Regs., tit. 15, §§ 2449.30, 3495-3496. Defendant asserts that the amended regulations now provide that inmates sentenced to life terms with the possibility of parole, subject to specific restrictions, may be considered an "indeterminately sentenced non-violent offender" and thus be eligible for parole. (*Id.*);

---

[2] For example, when an inmate is released from prison or transferred to another prison and there is no reasonable expectation nor demonstrated probability that he will again be subjected to the prison conditions from which he seeks injunctive relief, the claims for injunctive should be dismissed as moot. *Dilley v. Gunn*, 64 F.3d 1365, 1368-69 (9th Cir. 1995); *see also Alvarez v. Hill*, 667 F.3d 1061, 1064 (9th Cir. 2012) (same for claims for declaratory relief).

5

Cal. Code Regs., tit. 15, §§ 3495-3496. Defendant argues that since the new regulations that are now in effect means that inmates sentenced to life with the possibility of parole, ostensibly like Plaintiff, are no longer categorically excluded from Proposition 57's early parole consideration, Plaintiff's claim for injunctive relief should be dismissed as moot. (Mot. at 5, citing *Log Cabin Republicans v. United States*, 658 F.3d 1162, 1166 (9th Cir. 2011) (providing that courts "have repeatedly held that a case is moot when the challenged statute is repealed, expires, or is amended to remove the challenged language.").)

In opposition, Plaintiff asserts the case is not moot because the amended § 3491(b)(1) still excludes him from early parole consideration, even though he is a non-violent offender. (Opp. at 3.) He asserts that the state court ordered that specific language in this section be "repealed" but that the regulations were amended instead, and the amendment still excludes indeterminately sentenced non-violent offenders from early parole consideration. (*Id.*) Plaintiff also asserts that amended section 3491(b)(1) conflicts with newly adopted section 3496(a). (*Id.* at 4.) Defendant asserts in reply that Plaintiff misstates the law and "elevates form over substance" because section 3491(b)(1) now provides a new process for indeterminately sentenced nonviolent offenders, and that there is no conflict between the regulations. (Reply at 2.)

The Court has reviewed the original § 3491 and as amended. (Opp., Ex. A; RJN 008-009.) Although § 3491 formerly provided a blanket exclusion of non-violent offenders that were serving a term of life with the possibility of parole, now considered an "indeterminately-sentenced nonviolent offender," from parole consideration, (RJN 002), the section as amended currently provides that such inmates "may be eligible for parole consideration under Article 2 of this subchapter." (RJN 008.) While Article 1 sets forth the criteria for "parole consideration for <u>determinately</u>-sentenced nonviolent offenders," Article 2 sets forth the criteria for "parole consideration for <u>indeterminately</u>-sentenced nonviolent offenders." (RJN 015.) As such, there is no "conflict," as Plaintiff asserts,

6

between § 3491, which sets forth parole eligibility review for "determinately-sentenced nonviolent offenders" and § 3496, which sets forth parole eligibility review for "indeterminately-sentenced nonviolent offenders." Accordingly, Plaintiff's request for injunctive relief that stops the blanket exclusion from parole consideration of non-violent offenders serving life terms, like himself, is moot by the subsequent change in law which provides a parole process for such inmates, which means there is no longer a live, justiciable controversy. *Flast*, 392 U.S. at 95. Defendant's motion to dismiss the claim for injunctive relief as moot should be granted. *See Mitchell*, 75 F.3d at 528.

Because Plaintiff's summary judgment motion challenges the original regulations before the amendments were promulgated, the arguments presented therein are now moot. Accordingly, the Court shall deny Plaintiff's summary judgment motion as such.

### 2. Eleventh Amendment Immunity

Plaintiff is suing Defendant Kernan in "both his official capacity and individual capacity," and is seeking punitive, compensatory, and nominal damages. (Compl. at 3, 4.) Defendant asserts that Plaintiff's claim for damages against him in his official and personal capacities must be dismissed as barred by the Eleventh Amendment. (Mot. at 5.)

The Eleventh Amendment to the United States Constitution bars a person from suing a state in federal court without the state's consent. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984). The United States Supreme Court has held that state officials acting in their official capacities are not "persons" under Section 1983 because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). The United States Supreme Court concluded that such a suit is therefore no different from a suit against the state itself. *Id.* Accordingly, the Eleventh Amendment bars Plaintiff's claims for monetary relief to the extent that they are based on acts by Defendant in his official capacity. *See id.*; *Nesbit v. Dep't of Pub. Safety*,

7

Nos 06-16428, 06-16623, 283 Fed. Appx. 531, 533 (9th Cir. 2008) (unpublished memorandum disposition) (concluding that the district court properly dismissed prisoners' claims against defendants acting in their official capacities).

### 3. Legislative Immunity

Defendant also asserts that he is entitled to absolute legislative immunity against damages in his personal capacity for promulgating regulations. (Mot. at 5-8.)

It is well established that legislators are entitled to absolute immunity from civil liability for their legislative functions. *See Bogan v. Scott-Harris*, 523 U.S. 44, 46 (1998). This absolute immunity extends to federal, state and local legislators, *see id.* at 54 (local legislators); *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951) (state legislators), and protects them from injunctive as well as monetary relief, *see Supreme Court v. Consumers Union*, 446 U.S. 719, 731-34 (1980). Officials outside the legislative branch are also entitled to legislative immunity when they perform legislative functions. *See Bogan*, 523 U.S. at 46.

Although legislators have absolute immunity from suits based on their legislative acts, not all governmental acts by a legislator or legislature are legislative in nature. *See Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 580 (9th Cir. 1984), *cert. denied*, 471 U.S. 1054 (1985). Acts that are administrative or executive in nature receive less than absolute protection. *See Bateson v. Geisse*, 857 F.2d 1300, 1304 (9th Cir. 1988); *Cinevision Corp.*, 745 F.2d at 577. Whether an act is administrative or executive may depend on whether the act involves the formulation of policy, or is the type of "ad hoc decisionmaking engaged in by the executive," or it may depend on the scope of the act in question. *Id.* at 580. The factors to be considered have been summarized as: (1) whether the act involved ad hoc decision making, rather than the formulation of policy; (2) whether it applies to on a few individuals, rather than the public at large; (3) whether it is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation.

8

*Kaahumanu v. County of Maui*, 315 F.3d 1215, 1220 (9th Cir. 2003). The factors are not mutually exclusive. *Id.* Generally speaking, "an act which applies generally to the community is a legislative one, while an act directed at one or a few individuals is an executive one." *Bateson*, 857 F.2d at 1304.

Defendant asserts that his act of promulgating regulations regarding parole eligibility was legislative because it effectuated a considered policy that was authorized by Proposition 57 and created binding rules that applied to all inmates. (Mot. at 6.) Defendant asserts that firstly, his actions were not ad hoc because the regulations were not made to address the specifics of Plaintiff's individualized situation. Secondly, the regulations did not apply to only a few individuals, but to a discrete population – the inmate population – and applied to both current and future inmates. (*Id.* at 6-7, citing *Schmidt v. Contra Costa County*, 693 F.3d 1122, 1136 (9th Cir. 2012).) Thirdly, Defendant asserts that the promulgation of regulations, although not formally legislative in nature, is properly regarded as legislative because it was the issuance of a comprehensive set of rules governing parole that applied to all current and future inmates. (*Id.* at 7., citing *Kaahumanu*, 315 F.3d at 1222-23.) Lastly, Defendant argues the regulations bear the hallmarks of traditional legislation because they involved the "'use of discretion… and prospective implications that reach beyond the particular persons immediately impacted.'" (*Id.*, citing *Schmidt*, 693 F.3d at 1137.) In opposition, Plaintiff generally asserts that Defendant's function was administrative in nature, and therefore does not entitle him to legislative immunity. (Opp. at 6-7.) The only case he cites in response is a Fifth Circuit case which is not binding on this Court and is irrelevant, as it involves quasi-judicial immunity for state parole board members. (*Id.* at 7.)

The Court finds that Defendant is entitled to legislative immunity against damage claims for his actions in promulgating regulations that were authorized by Proposition 57. Defendant has established that his actions in this regard were legislative rather than

9

administrative in nature because the regulations apply generally to a discrete population, i.e., all current and future inmates, and is not directed at one or a few individuals. *See Bateson*, 857 F.2d at 1304. Furthermore, the regulations establish a policy regarding parole consideration, which is legislative in nature, rather than an ad hoc decision that applies only to Plaintiff. *See Kaahumanu*, 315 F.3d at 1220. Lastly, the regulations bear all the hallmarks of traditional legislation, *i.e.*, it involved the "use of discretion… and prospective implications that reach beyond the particular persons immediately impacted." *Schmidt*, 693 F.3d at 1137. This conclusion is consistent with other circuits, as shown by Defendant. (Reply at 4; *see*, *e.g., Fletcher v. U.S. Parole Comm'n*, 550 F.Supp.2d 30, 40 (D.D.C. 2008) (parole board's promulgation of an allegedly unconstitutional regulation is a quasi-legislative function entitling members to absolute legislative immunity from money damages); *Redwood Village Partnership v. Graham*, 26 F.3d 839, 841 (8th Cir. 1994) (executive branch agencies' promulgation of regulations is legislative in nature because like legislation, regulatory rulemaking "looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power").) Accordingly, Plaintiff's damage claims against Defendant in his personal capacity should dismissed as barred by absolute legislative immunity.

### 4. Equal Protection Claim

Plaintiff claims that the policy at issue also violates his right to equal protection because it treats "third-strikers," like himself, differently from similarly situated "second-strikers." (Compl. at 3-b.)

According to Defendant, California's three-strikes sentencing law provides that a defendant with one prior "serious" or "violent" felony conviction (a second-strike inmate) is sentenced to twice the term otherwise provided as punishment for the current felony conviction. (Mot. at 8, fn. 3.) A defendant with two or more prior "serious" or "violent" felony convictions (a third-strike inmate) is sentenced to an indeterminate term of life

imprisonment. (*Id.*, citing *Ewing v. California*, 538 U.S. 11, 16 (2003) (citing California Penal Code §§ 667; 1170.12).)

Defendant asserts that Plaintiff fails to state an equal protection claim because as a third-strike inmate, Plaintiff is not similarly situated to inmates with two strikes. (Mot. at 8.) In opposition, Plaintiff asserts that for purposes of Proposition 57's early parole consideration, the regulations do not distinguish between "non-violent third-strike inmates" and "non-violent second-strike inmates," and only consider whether an inmate has completed the full term for his non-violent primary offense. (Opp. at 5.) In reply, Defendant argues that Plaintiff's assertion that the original regulations violated the "intent" of Proposition 57 is no basis for an equal protection claim; rather, the inquiry asks whether persons similarly situated are treated alike. (Reply at 5.)

Defendant is correct that it matters not what whether the intent of Proposition 57 was to eradicate the difference between second or third strike inmates for the purpose of stating an equal protection claim. Rather, to state an equal protection claim, Plaintiff must show that he is being treated differently from other similarly situated inmates and that there is no rational basis for this difference in treatment. *See Glauner v. Miller*, 184 F.3d 1053, 1054 (9th Cir. 1999) (equal protection challenges to parole statutes distinguishing between categories of criminal offenders reviewed under a rational basis test because prisoners are not a suspect class and there is no fundamental constitutional right to parole). As Defendant points out, Plaintiff is a third-strike inmate sentenced to life without the possibility of parole, which is an indeterminate sentence. (Reply at 5.) As such, it cannot be said that Plaintiff is similarly situated to second strike inmates who have been sentenced to a fixed term, i.e., a determinate sentence of twice the term otherwise provided as punishment for the current felony conviction. *See supra* at 10. Plaintiff is asserting that he is similarly situated with all "non-violent offenders" regardless of their number of prior strikes. However, second and third strikers are treated differently because of recidivist

11

concerns, which is a rational basis. *See Glauner*, 184 F.3d at 1054. Accordingly, the Court finds that Plaintiff cannot state an equal protection claim based on his attempt to group "non-violent" second and third strikers together because there is a rational basis for treating these two groups differently. *See, e.g., United States v. Stokes*, 292 F.3d 964, 969 (9th Cir. 2002); *see also Alexander v. Madden*, No. 15-CV-2498-GPC-AGS, 2018 WL 4961507, at *3 (S.D. Cal. Oct. 15, 2018) (nonviolent third strikers not similarly situated to nonviolent second strikers). This claim must be dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Defendant Scott Kernan's motion to dismiss the action, (Docket No. 34), is **GRANTED**. The claim for injunctive relief against Defendant is **DISMISSED with prejudice** as moot. All claims for damages are **DISMISSED** as barred by the Eleventh Amendment and absolute legislative immunity. The equal protection claim is **DISMISSED with prejudice** for failure to state a claim.

Plaintiff's cross-motion for summary judgment, (Docket No. 29), is **DENIED** as moot.

This order terminates Docket Nos. 29 and 34.

**IT IS SO ORDERED.**

Dated: August 6, 2019

BETH LABSON FREEMAN
United States District Judge

Order Granting Motion to Dismiss; Denying MSJ as moot
PRO-SE\BLF\CR.17\07133Johnson_grant-mtd

12